JOHN B. KELAGHAN, *Adm'r d.b.n. c.t.a. vs.*
RALPH T. LEWIS, JR., *Guardian, et al.*

NOVEMBER 18, 1964.

PRESENT: Condon, C. J., Roberts, Paolino, Powers and Joslin, JJ.

Powers, J. This proceeding in equity was brought by the administrator d.b.n. c.t.a. of the estate of Ellen N. Tillinghast, praying for construction of the will of said testatrix and for instructions thereunder in accordance with the provisions of G. L. 1956, §9-24-28. When the cause was ready for hearing for final decree in the superior court, it was duly certified to this court for our determination.

It appears that Ellen Nichols married Winfield A. Tillinghast, a widower and the father of a five-year-old daughter Mary. No children were born to Winfield and Ellen Tillinghast, but Mary resided with them and Ellen Tillinghast treated her as her own daughter.

In 1929 Mary married S. Fay Isaacs and of this marriage three children were born, namely, Nancy, Elizabeth and Philip. The first two named children were living on July 22, 1933 when Ellen N. Tillinghast executed her last will and testament. The third child, Philip, was born some two years later in 1935.

The testatrix died on November 7, 1950. By clause Second of her will she gave, bequeathed and devised to

460

her husband a life estate in all her property, which upon his death was disposed of by bequests under separate paragraphs. The beneficiaries of six specific bequests, however, need not be identified.

There then follows paragraph (7) in said clause Second as follows:

"All the rest of said rest, residue and remainder to be divided equally among the issue of Mary T. and S. Fay Isaacs, if any such be living at the decease of my said husband, but, if there be no such issue of said Mary T. and S. Fay Isaacs living at that time, then I give said rest, of said rest, residue and remainder in equal shares to Mary T. Isaacs, S. Fay Isaacs, Frank B. Littlefield, Richard W. Littlefield and Marion Littlefield."

It is for the construction thereof that the instant proceedings were instituted.

The life tenant lived until May 2, 1962 at which time the three children of Mary and S. Fay Isaacs were living. The two girls had married but the son Philip, who was retarded, remained single and on July 31, 1963, Ralph T. Lewis, Jr. was qualified as his guardian by the probate court of the city of Warwick.

Nancy Isaacs married Ernest Ward, Jr. on June 26, 1954. There were no children born of this marriage, but on May 10, 1962, after the death of the life tenant, the adoption of a daughter, Patricia, born June 22, 1961, was approved by the probate court of the district of Hartford in the state of Vermont.

Elizabeth Isaacs married William Burton on November 27, 1954 and of this marriage three children were born who were living at the death of the life tenant, and a fourth child was en ventre sa mere.

The bill avers that Nancy Isaacs Ward, through her attorney, made demand on complainant for distribution of the residue remainder in equal shares among Nancy Isaacs Ward, Elizabeth Isaacs Burton and Ralph T. Lewis, Jr. in

his capacity as guardian of Philip Tillinghast Isaacs, and that complainant, being uncertain of his obligation in the premises, prays for construction of the subject clause and for instructions. Pursuant to his prayer, citations issued to Ralph T. Lewis, Jr. in his capacity as guardian of Philip, Nancy Isaacs Ward and the adopted daughter Patricia, Elizabeth Isaacs Burton and the four Burton children. All minors are represented by guardians ad litem.

At the hearing in the superior court, Mary Isaacs stated that her stepmother, the testatrix, had treated her with the kindness of a mother and had been very fond of the three Isaacs children. She testified in some detail as to how the testatrix had always treated them equally and that they thought of her as their grandmother. She added that Nancy and Elizabeth always spent the summers with the testatrix at her summer home in Maine and that Philip did on some occasions, but not being well, did not visit out of the state with the regularity that marked the girls' vacations. It appears that, except during the summer, the testatrix lived in her Warwick, Rhode Island home, almost across the street from the Isaacs and that during such time the children were frequent visitors at the home of the testatrix.

Nancy Isaacs Ward, Elizabeth Isaacs Burton and the guardian of Philip Isaacs contend that, by the language she employed in the gift over, the testatrix evinced an intention to divide the remainder among them equally. On the other hand, the guardians ad litem of the five minor children contend that, by the use of the words "divided equally among the issue of Mary T. and S. Fay Isaacs," the remainder should be distributed per capita among all eight as a matter of law, absent a clear intention to the contrary, citing *Pearce* v. *Rickard*, 18 R. I. 142. In seeking construction of the testatrix' intention, complainant has framed the following five specific questions:

"1. Under the provisions of said Will, may Complainant distribute all the residue of said Estate equally

among Respondents, Ralph T. Lewis, Jr. in his capacity as Guardian of Philip Tillinghast Isaacs. Nancy Isaacs Ward, and Elizabeth Isaacs Burton as being the only issue of Mary T. and S. Fay Isaacs entitled to share in such distribution?

"2. If the answer to question -1- be in the negative, should distribution of the residue be made equally among the aforesaid three Respondents and also among the Respondents Stephen A. Burton, Jeffery [sic] M. Burton, and William K. Burton?

"3. If the answer to questions -1- and -2- be in the negative, should distribution of the residue be made equally among the aforesaid six Respondents and also to the Respondent Lyn Burton?

"4. If the answer to questions -1-, -2-, and -3- be in the negative, should distribution of the residue be made equally among the aforesaid six respondents listed in questions -1- and -2-, and also to the Respondent Patricia Ward?

"5. If the answer to questions -1-, -2-, -3-, and -4- be in the negative should distribution of the residue be made equally among all eight of the respondents named in these questions?"

It is to be noted that the questions are so posited as to render moot all succeeding the one first answered in the affirmative. Since, in our judgment, the first should be answered in the affirmative, the remaining questions need not be considered.

In the *Pearce* case on which the five minor respondents rely heavily there was a gift for life with distribution of the trust property to such of the life tenant's issue who might be living at her death.

This court followed the unanimous rule prevailing in England at that time to the effect that, in the absence of an intention to the contrary, the word "issue" was one of purchase and not of limitation, thus including per capita all lineal descendants of the life tenant alive at the time the gift took effect. The learned justice noted that there was

a division of authority among the courts of this country and an increasing tendency among the courts of England and the United States to find very little as being necessary to establish a contrary intention. Such tendency, he concluded, was an outgrowth of an underlying suspicion that the rule more often than not defeated the true intention of the donor. Nevertheless, finding that there was nothing whatsoever in the case under consideration which evinced a contrary intention on the part of the testatrix, this court followed the English cases.

The decision was rendered in 1893 and shortly thereafter the general assembly abrogated the rule insofar as it related to cases where the gift over was to the issue of the life tenant. The change is contained in what is now G. L. 1956, §33-6-9. It provides:

"Whenever a devise or bequest is made to one for life and thereafter to his issue, in any will hereafter made, such issue shall be construed to be the children of the life tenant living at his decease, and the lineal descendants of such children as may have then deceased, as tenants in common, but such descendants of any deceased child taking equally amongst them the share only which their deceased parent, if then living, would have taken."

The respondents Nancy Isaacs Ward, Elizabeth Isaacs Burton and Ralph T. Lewis, Jr., guardian of Philip T. Isaacs, acknowledging that the legislative amendment is binding only in those cases where the word "issue" is used to describe descendants of the life tenant, nevertheless contend that this court in *Rhode Island Hospital Trust Co.* v. *Bridgham*, 42 R. I. 161, extended the scope of the statutory rule by refusing to follow *Pearce* v. *Rickard, supra*.

There, by a will executed subsequent in time to the enactment of the legislative rule heretofore quoted, the testator gave, devised and bequeathed:

" 'All the rest, residue and remainder of my estate of every kind whatsoever, real, personal, and mixed,

I give, devise and bequeath to the Rhode Island Hospital Trust Company, In Trust, nevertheless, to collect and receive the rents and profits, interest and income thereof, and to pay over and apply the same to the use of my wife, Honorine G. Bridgham, during and for the term of her natural life, and upon her death, I give, devise and bequeath all such rest, residue and remainder of my estate, in fee simple, absolutely and forever, to my brother, Joseph Bridgham, and his issue.' "

In the case at bar as in the *Bridgham* will, the property involved in the life estate and gift over was all inclusive of that which the testatrix owned at her death, except for some specific bequests, so that there is no significant distinction between the two cases insofar as the nature of the property is concerned. The cases are distinguishable, however, in that both the life tenant and the testator's brother Joseph predeceased him. We are not persuaded, however, that this distinction is material as to the conclusion we reach in the case before us.

At the death of the testator William H. Bridgham, the brother Joseph was survived by two daughters, one son, and three grandchildren who were the children of Joseph's son Samuel. These six constituted all the descendants of Joseph.

This court, after carefully reviewing the authorities which were persuasive with the court in reaching the decision arrived at in *Pearce,* commenting on the abrogation of the rule by the legislature in cases factually similar and acknowledging that the facts before it did not bring the case within the statutory provision, nevertheless concluded that in the absence of an expression to the contrary, distribution per capita among all descendants would be contrary to the intention of the testator and that in the case before it the word "issue" should be held to import representation.

At page 173 the court stated: "We have less hesitation in thus disregarding the authority of *Pearce* v. *Rickard, supra,* in this particular, because since that decision the

General Assembly has by statute changed the rule of construction laid down in that case with reference to a devise or bequest to one for life and thereafter to his issue. * * * Hence, we feel greater freedom in changing the rule with reference to the distribution of those estates, extremely few in number, that are not within the scope of said statutory provision, in order that the construction of language similar to that now under consideration may conform to what seems to us is the intention of the testator indicated by the use of the word 'issue' without qualification."

The court then held that upon the death of the life tenant the gift over was to Joseph and all his descendants, taking per stirpes, and since all of the first generation were living, the three children took to the exclusion of the grandchildren.

It would seem therefore that there is merit in the contention made by the three Isaacs children that *Bridgham* decisionally extended the scope of the statutory abrogation of the common law rule. It is clear from its language that, in addition to passing on the merits of the cause with which it was concerned, the court was of the opinion that uniformity with the statutory rule was both advisable and desirable.

The guardians ad litem argue, however, that subsequent to the decision in *Bridgham,* this court referred with approval to the decision in *Pearce* v. *Rickard, supra,* citing *Smith* v. *Bradford,* 51 R. I. 289, and *Langworthy* v. *Clarke,* 53 R. I. 418. A careful reading of these cases, however, discloses that the references therein to the *Pearce* case are of no comfort to the interest of the guardians ad litem.

Likewise, we are not dissuaded from reaching the conclusion we arrive at in the instant cause by reason of the decision in *Industrial National Bank* v. *Dyer,* 96 R. I. 39, 188 A.2d 909, also argued by them as having some relevance to the question before us.

The only such relevance is, as they candidly set forth in their brief, the fact that there, as here, beneficiaries are

uncertain in number at the time of the gift, a time for division is fixed when such beneficiaries will be determined and the amount of the share of each is dependent upon the number of beneficiaries entitled to take. These incidents of similarity, however, are found to be without significance when the two cases are compared in the light of their respective issues. The decision we reach here is in nowise out of harmony with the decision in *Dyer*.

We hold therefore that, in the absence of a clear intention to the contrary, a gift over to the issue of someone other than the life tenant will result in a per stirpes distribution of the gift.

The first question propounded is answered in the affirmative, and on November 25, 1964, the parties may present for our approval a form of decree in accordance with this opinion for entry in the superior court.

*John B. Kelaghan* for complainant.

*Ralph T. Lewis, Jr.; Edwards & Angell, Edward F. Hindle, V. Duncan Johnson; Hinckley, Allen, Salisbury & Parsons, Stuart H. Tucker; Sanford H. Gorodetsky; Raymond J. McMahon, Jr; James L. Taft, Jr.,* for respondents.